
IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

DEANTE WALKER, INDIVIDUALLY,
AND AS ADMINISTRATOR OF THE
ESTATE OF REGINALD E. WALKER,
DECEASED, AND DEBORAH WALKER,
AS NEXT FRIEND AND CONSERVATOR
OF REGINALD WALKER, JR.,
A MINOR CHILD,

    Plaintiffs,

v.

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY, FIREMAN'S
FUND INSURANCE COMPANY,
GREAT AMERICAN INSURANCE
COMPANY, AND FEDERAL
INSURANCE COMPANY,

    Defendants.

CASE NO.: 1:14-CV-69 (WLS)

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY,

    Defendant/Counter-Plaintiff,

v.

DEANTE WALKER, *et al.*,

    Plaintiffs/Counter-Defendants.

## **ORDER**

Before the Court is Plaintiffs' Motion for Voluntary Dismissal of Count Two of the Complaint (Doc. 95), Defendants' Motion to Exclude Expert Opinions of John Bell and John Oxendine (Docs. 78, 79), and Defendants' Joint Motion for Summary Judgment (Doc.

1

83.) After a recitation of the pertinent procedural history and factual history, the Court will address each of the pending motions in turn.

## PROCEDURAL HISTORY

On April 25, 2014, Defendants removed this case from the State Court of Dougherty Country, Georgia. (Doc. 1.) Plaintiffs' Complaint brought a breach of contract and a bad faith claim against Defendants. (Doc. 1-6.) On May 16, 2014, North American Specialty Insurance Company ("NAS") answered Plaintiffs' Complaint and filed a Counterclaim against Plaintiffs' seeking a declaratory judgment that NAS did not owe any underinsured motorist benefits or any other relief. (Doc. 21.)

On July 2, 2015, Defendants' filed their Joint Motion to Exclude Expert Opinions of John Bell and John Oxedine (Docs. 78, 79) and a Joint Motion for Summary Judgment (Doc. 83.) Over a month later on August 21, 2015, Plaintiffs filed a Motion to Voluntary Dismiss Count Two of the Complaint without prejudice. (Doc. 95.) Since the briefing period to respond or reply has now closed, all of the pending motions before the Court in this case are now ripe for review.

## FACTUAL HISTORY

The facts underlying this case began on March 13, 2008, when Reginald Walker was killed as a result of an accident with Eddie Lee Williams, a driver for S. Jerome Cox, also known as Door Products (hereinafter "Door"). (Doc. 84 at ¶ 1.) Williams was driving an Isuzu truck leased by Door from Gelco Corporation, also known as GE Capital Fleet Services, a subsidiary of General Electric Capital Corporation ("General Electric"). (*Id.* at ¶ 5.) At the time of the accident, Reginald Walker was driving a vehicle owned by his employer Estes Express Lines, Inc. ("Estes") within the scope of his employment. (*Id.* at ¶ 2.) Reginald Walker was survived by his adult son, Deante Walker, and his minor son, Reginald Walker, Jr. (Doc. 1-7 at ¶ 2.) Deante Walker was appointed Administrator of Reginald Walker's estate by the Probate Court of Dougherty County, Georgia on March 24, 2008. (*Id.* at ¶ 4.)

Deborah Walker[1], the mother of Reginald Walker, Jr., was appointed by the Probate Court of Dougherty County, Georgia as conservator of Reginald Walker, Jr., a minor. (*Id.* at ¶ 6.)

On November 11, 2008, Deante Walker, individually and as administrator, and Deborah Walker, as next friend and conservator for her minor son Deante Walker, Jr. (hereinafter the "Walkers"), entered into a limited release of liability for Door and Williams pursuant to O.C.G.A. § 33-24-41.1 with State Farm Mutual Automobile Insurance Company ("State Farm") for $2,000,000. (Doc. 84 at ¶ 11.) Specifically, the agreement between the parties released Door and Williams "for all personal liability, from any and all claims, demands, actions, causes of action, suits, liabilities, damages, costs, and obligations of any kind or nature whatsoever, both known and unknown" except for other insurers that may cover damages resulting from Door and Williams accident with Reginald Walker. (Doc. 1-7 at 17-18.)

On April 13, 2009, the Walkers filed a wrongful death lawsuit against Williams and Door seeking damages for funeral and burial expenses, pain and suffering, and other related damages in the State Court of Clayton County, Georgia. (Doc. 1-7 at 1-13.) In June of 2009 during the Walkers' state court case, Door and Williams responded to a Motion for Summary Judgment filed by the Walkers. (Doc. 84-5.) Amongst other statements responding to the Walkers' Motion for Summary Judgment, Door and Williams noted that they "intend to conduct discovery as to any applicable insurance coverage available to GE Capital in connection with the claims asserted in this action." (*Id.*) Years later on September 12, 2012 at the end of a jury trial, the jury awarded $5,000,000 to the Walkers, $3,000,000 more than the Walkers already received from State Farm. (Doc. 84 at ¶ 15.) A judgment was then entered by the State Court of Clayton County, Ga that acknowledged the limited release of State Farm. (Doc. 1-9 at 10-11.)

In accordance with the previous limited release and state court judgment, the Walkers attempted to collect the remaining $3,000,000. In doing so, there were a number of

---

[1] The Court notes for the record that Deborah A. Walker is sometimes referred to, and often signs documents that are part of the record, as Debra Walker. (*See e.g.*, Doc. 84-10 at 15.) To the extent Deborah A. Walker is in actuality Debra Walker or prefers to be referred to as Debra Walker, the Court notes that in referring to Deborah Walker it also is acknowledging Debra Walker if in actuality that is Plaintiff's legal or preferred name.

insurance agreements to assess. In addition to Door's insurance coverage with State Farm, Door also had insurance coverage with Electric Insurance Company as auto lessee of General Electric. General Electric, and any subsidiary of General Electric, were insured under a policy with Electric Insurance Company. (Doc. 84-2 at 5.) Electric Insurance Company's agreement with General Electric and any subsidiaries of General Electric included coverage of leased automobiles which the insurance agreement defined as "[a]utos you own and which, in the course of your trade or business of renting or leasing motor vehicles, are leased to a 'lessee' under written contract (or any permitted or authorized extension thereof) without the services of a driver and for which we have charged a premium." (Doc. 84 at ¶ 7; Doc. 84-2 at 26.) Electric Insurance Company's insurance policy covered the entity or person purchasing the policy and anyone permitted to use the automobile covered by Electric's insurance by the covered lessee. (Doc. 84-2 at 12.)

Reginald Walker had insurance with Allstate that provided coverage for uninsured motorist insurance with a limit of $25,000 per person and $50,000 per accident which became effective on April 17, 2008. (Doc. 84-3 at 11.) Reginald Walker's employer, Estes Express, Inc., also had insurance coverage. Zurich American Insurance Company ("Zurich") issued a commercial auto liability insurance policy to Estes Express for the policy period between May 1, 2007 and May 1, 2008. (Doc. 101 at ¶ 11.) Estes expressly rejected its uninsured motorist coverage by written notice. (Doc. 84-8 at 4.) Estes's agreement with Zurich, defines uninsured motorist coverage as insurance coverage for the "protection of persons insured under the policy who are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle because of bodily injury, loss of consortium or death of an insured or for injury to or destruction of property of an insured under the named insured's policy." (*Id.*) Estes also had a separate insurance policy with American Guarantee and Liability Insurance Company ("American Guarantee"), an entity of Zurich with a $20,000,000 limit on liability. (Doc. 84 at ¶ 20.) On October 10, 2012, the Walkers entered into a settlement agreement for their uninsured motorist benefits claim with American Guarantee for $950,000.

4

In addition to the American Guarantee and Zurich policies, Estes also had four excess insurance policy agreements as well. Each entity that entered into an excess insurance agreement with Estes is named as a Defendant in this case. The first of four insurance agreements was between Estes and NAS, which applied when damages were over $20,000,000. (Doc. 84 at ¶¶ 24-26.) The second of four excess insurance agreements was between Estes and Fireman Fund Insurance Company ("Fireman's Fund"). (Doc. 1-7 at 58.) The Fireman's Fund policy provides coverage for damages "in excess of all Underlying Insurance" assuming that damages were insured by all of the policies listed in the schedule of underlying insurance policies and "all Underlying Insurance had been exhausted by payment of their limits of insurance." (Doc. 84 at ¶ 28.) Specifically, Fireman's Fund listed two policies to which the Fireman's Fund was an excess policy: American Guarantee's policy limit of $20,000 and NAS's policy with limits of $25,000. (*Id.* at ¶ 29.) The third of four excess insurance agreements was between Estes and Great American Insurance Company of New York ("Great American Insurance"). Great American Insurance only attached after the underlying limits were met for American Guarantee's policy, NAS's policy, and the Fireman's Fund Policy. (*Id.* at ¶ 29.) The last excess insurance agreement was between Estes and Federal Insurance Company ("Federal Insurance") and only attached after the other three underlying excess insurance agreements had been fulfilled and the aggregate limit of liability totaled at least $70,000,000. (*Id.* at ¶ 35.)

On October 23, 2013, the Walkers' counsel wrote to NAS, Fireman's Fund, Great American Insurance, and Federal Insurance (hereinafter "Defendants") demanding payment of $2,050,000. NAS responded to the Walkers' letter and mentioned that sufficient evidence had not been provided for NAS to "conclude that [they] have a duty to pay any portion of the judgment" the Walkers' received. (Doc. 84-12.) Thereafter, on March 10, 2014 the Walkers initiated the instant lawsuit currently before the Court. (Doc. 1-6.) The Walkers alleged that Defendants are liable for breach of contract ("Count One") and acting in bad faith ("Count Two"). (*Id.*) Defendants answered and filed an Amended Counterclaim for Declaratory Judgment and sought a determination that the Plaintiffs are not entitled to uninsured motorist benefits.

5

## **DISCUSSION**

Prior to the Court's consideration of Defendants' Motion for Summary Judgment, the Court will first consider the Walkers' Motion for Voluntary Dismissal of Count Two of the Complaint (Doc. 95), and then Defendants' Motion to Exclude Expert Opinions of John Bell and John Oxendine (Docs. 78, 79).

### I. Walkers' Motion for Voluntary Dismissal of Count Two of the Complaint & Defendants' Motion to Exclude Experts

Count Two of the Walkers' Complaint alleged that Defendants acted in bad faith by failing to pay uninsured motorist coverage benefits. (Doc. 1-6 at 17.) Over a month after Defendants filed their Motion for Summary Judgment and Motions to Exclude Expert Opinions (Docs. 78, 79), the Walkers filed their Motion for Voluntary Dismissal of Count Two alleging bad faith pursuant to Federal Rule of Civil Procedure 41(a)(2). (Doc. 95.) The Defendants replied in opposition to the Walkers' Motion for Voluntary Dismissal and argued that at this juncture they would be "unequivocally harmed by a dismissal of Plaintiffs' bad faith claim." (Doc. 108 at 5.) The Walkers replied and noted that as a preliminary matter, their Motion might be more properly described as a motion to amend under Federal Rule of Civil Procedure 15 and noted that while their bad faith claim remains valid, their decision to dismiss was simply an attempt to "narrow the issues for trial moving forward." (Doc. 109 at 5.)

In the view of the Court, voluntarily dismissal of the Walkers' bad faith claim without prejudice is proper since Rule 41 provides appropriate consideration of Defendants' concern. As the parties well know, district courts enjoy broad discretion in determining whether or not to grant a plaintiff's motion for voluntary dismissal. *Pontenberg v. Bos. Scientific Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001)(citing *McCants v. Ford Motor Co, Inc.*, 781 F.2d 855, 857 (11th Cir. 1986)). For the majority of cases, voluntary dismissal should be granted unless it is apparent the defendant will suffer clear legal prejudice beyond "the mere prospect of subsequent lawsuit, as a result." *Id.*

Defendants' central argument in opposition to the Walkers' Motion is that to dismiss the Walkers' bad faith claim without prejudice well after this case has been extensively litigated and significant costs have been expended would significantly prejudice Defendants given the

fact that "Plaintiffs could re-animate their claims at any time." (Doc. 108 at 5.) While the Court appreciates Defendants' concerns regarding further costs, that concern is not enough in itself to deny voluntary dismissal in this case. In the Eleventh Circuit, "delay alone, in the absences of bad faith, is insufficient to justify a dismissal with prejudice." *Pontenberg*, 252 F.3d at 1258. There's no doubt that the request for voluntarily dismissal was delayed. However, that delay was not enough to constitute dismissal of the Walkers' bad faith claim with prejudice. Although Defendants appear to suggest that the Walkers knowingly proceeded with an alleged illegitimate bad faith claim, the record cannot support a finding the Walkers asserted their claim at any point in bad faith. As a result, the Court does not see it proper to voluntarily dismiss the Walkers' bad faith claim with prejudice.

The Court also notes that Defendants' concerns regarding the use of further resources are not ignored by Rule 41. If the Walkers, at some point in the future, decide to re-litigate their bad faith claim, Federal Rule of Civil Procedure 41(d) allows for a court to order the Walkers to pay all or part of the costs related to this action, which if re-litigated would be the previous action. Fed. R. Civ. P. 41(d)(1). Given the record before the Court here, future courts addressing the Walkers' bad faith claim would be well-reasoned to order the Walkers to pay for Defendants' costs related to this action.

Given the fact Defendants' primary concerns are addressed by the Federal Rules and Defendants' do not appear to face any other substantial prejudice, the Walkers' Motion for Voluntary Dismissal is **GRANTED WITHOUT PREJUDICE**. (Doc. 95.) Given the Court's dismissal of Count Two of the Walkers' Complaint, the Court hereby **DENIES AS MOOT** without prejudice Defendants' Motions to Exclude Experts John Bell and John Oxendine. (Docs. 78, 79.) As both parties acknowledge, the Walkers relied on both experts only as it related to their bad faith claim. The Court will now proceed to Defendants' Summary Judgment Motion.

**II.   Summary Judgment Standard**

   **A.   Federal Rule of Civil Procedure 56**

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when a party contends no genuine issue of material fact remains and the party is entitled to

judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, 555 Fed. App'x 842, 847 (11th Cir. 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.' " *Matsushita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for

summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### B. Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. Defendants filed a summary judgment motion with a statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (Docs. 83, 84.) The Walkers adequately replied to Defendants' Motion for Summary Judgment and supplied responsive statement of facts as well. (Docs. 101, 102.) Both parties having acted in accordance with the applicable standards, the Court will proceed with reviewing the merits of Defendants' Motion.

### III. Defendants' Motion for Summary Judgment

Central to parties' dispute is whether the Walkers' are entitled to underinsured motorist benefits under Georgia law. At the time of the accident resulting in this case,

9

Georgia law defined and outlined the parameters for receiving uninsured motorist coverage as follows:

> (D) "Uninsured motor vehicle" means a motor vehicle, other than a motor vehicle owned by or furnished for the regular use of the named insured, the spouse of the named insured, and, while residents of the same household, the relative of either, as to which there is:
>
> > (i) No bodily injury liability insurance and property damage liability insurance;
> >
> > (ii) Bodily injury liability insurance and property damage liability insurance with available coverages which are less than the limits of the uninsured motorist coverage provided under the insured's insurance policy, but the motor vehicle *shall only* be considered to be uninsured for the amount of the difference between the available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle and the limits of the uninsured motorist coverage provided under the insured's motor vehicle insurance policy; and for this purpose available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle shall be the limits of coverage less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage;
> >
> > (iii) Bodily injury liability insurance and property damage liability insurance in existence but the insurance company writing the insurance has legally denied coverage under its policy;
> >
> > (iv) Bodily injury liability and property damage liability insurance in existence but the insurance company writing the insurance is unable, because of being insolvent, to make either full or partial payment with respect to the legal liability of its insured, provided that in the event that a partial payment is made by or on behalf of the insolvent insurer with respect to the legal liability of its insured then the motor vehicle shall only be considered to be uninsured for the amount of the difference between the partial payment and the limits of the uninsured motorist coverage provided under the insured's motor vehicle insurance policy; or
> >
> > (v) No bond or deposit of cash or securities in lieu of bodily injury and property damage liability insurance.

O.C.G.A. § 33-7-11 (effective between July 1, 2006 and December 31, 2008)(emphasis added). Georgia courts have made it further clear that before an injured claimant can recover

10

uninsured or underinsured motorist benefits against the claimants insurance policy, that claimant "must exhaust available liability coverage" available to the tortfeasor. *Carter v. Progressive Mountain, Ins.*, 761 S.E.2d 261, 263 (Ga. 2013). Where an insurance provider moves for summary judgment and alleges that an at-fault driver was not underinsured, a claimant bears the initial burden of proving the at-fault driver was underinsured. *Travelers Home & Marine Ins. Co. v. Castellanos*, 773 S.E.2d 184, 186 (Ga. 2015).

Defendants' Motion for Summary Judgment first argues the Walkers failed to exhaust existing liability coverage provided by Door. Specifically, Defendants argue the Walkers failed to exhaust insurance coverage available to Door and Williams through Electric Insurance Company. Defendants also point to another complaint seeking declaratory judgment against Electric Insurance Company for insurance proceeds related to Deante Walker's accident filed on June 5, 2015, over a year after this case was initiated by the Walkers. *See Deante Walker, et al. v. Electric Ins. Co.*, 1:15-cv-91 (WLS).

The Walkers do not contest the fact that they did not receive payment or submit a claim to Electric prior to initiating this case. (*See* Doc. 101 at ¶ 10.) Instead, the Walkers appear to defend the legitimacy of their breach of contract claim by asserting that: (1) the Walkers exhausted all available insurance policies possessed by Williams and Door; (2) Williams is not a covered party under Door's insurance agreement with Electric; and (3) the Walkers were not knowledgeable that Electric's insurance policy existed. The Walkers' first argument is largely predicated on their assertion that exhaustion of insurance coverage of a tortfeasor is a prerequisite to recovery, not a prerequisite for bringing a claim. The Walkers argument is a distinction that attempts to conflate and confuse the central question before the Court here: whether or not Defendants breached their contractual obligation to the Walkers. At the time the Walkers initiated this case, they failed to exhaust all available insurance of Williams and Door. O.C.G.A. § 33-7-11 is unequivocal in its requirement that uninsured motorist coverage attaches after, not before, the tortfeasor's insurance is exhausted. As a consequence, there is no evidence supporting the Walkers' assertion Defendants were obligated to provide uninsured or underinsured motorist insurance prior to the point of proper attachment.

The Walkers' second argument that Williams was not a party covered under Door's insurance agreement with Electric is flawed as well. The Electric insurance agreement includes in the definition of "insureds" those using a covered automobile with Door's permission. (Doc. 84-2 at 12.) Based on the record before the Court, it has already been decided that Williams was operating a vehicle within the scope of his employment with Door. The issue the Walkers appear to raise in response to Defendants' present motion attempts to re-litigate whether or not Williams' actions were considered under the course of his employment or permitted activities. That issue is not before this Court; it was presumably before the state court in Clayton County in deciding liability. (*See* Doc. 1-7 at 15.) Given the record before the Court and insurance agreement with Electric, there is no genuine question of material fact that Williams was considered a covered party when he collided with Deante Walker's vehicle.

The Walkers' last argument is of little consequence. While the Court does not see the need to find that the Walkers consciously disregarded the Electric insurance policy, the fact remains that the insurance policy existed and was not exhausted. In accordance with both current Georgia law and the applicable Georgia law at the time, the Walkers' breach of contract claim as presented on the record before this Court is flawed as a matter of law. Defendants' Motion for Summary Judgment on the Walkers' breach of contract claim is **GRANTED**. (Doc. 83.)

Defendant North American Specialty Insurance Company's ("NAS") Counterclaim for Declaratory Judgment is **DISMISSED WITHOUT PREJUDICE** as well. (Doc. 21.) Given the Court's determination regarding the Walkers' breach of contract claim, it is evident that NAS did not breach any contractual obligation as of the time the Walkers initiated the present action. However, in light of the Walkers' suggestion to the Court that they entered into a settlement agreement with Electric, a separate question remains as to whether or not NAS and other Defendants could potentially be obligated to provide uninsured motorist coverage to the Walkers in the future. Rather than merge the primary issue before the Court with separate issues moving forward, the Court deems it appropriate to dismiss NAS's counterclaim without prejudice at this juncture. The Court acknowledges

that further action and an additional articulation of facts and law by the parties could necessitate further determinations by this Court or another court. As a consequence, the instant order does not necessarily resolve the dispute between the parties in its entirety. To conclude that no genuine issue of material fact remains as to NAS's counterclaim in this case would be inappropriate and essentially premature.

**SO ORDERED**, this   31st   day of March, 2016.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE
UNITED STATES DISTRICT COURT**